IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ARENDI HOLDING LTD.,

        Plaintiff,

      v.

MICROSOFT CORPORATION and
DELL INC.,

        Defendants.

C.A. No. 09-119-JJF-LPS

---

**DEFENDANT MICROSOFT CORPORATION'S BRIEF IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT THAT ARENDI IS NOT ENTITLED
TO PROVISIONAL DAMAGES PURSUANT TO 35 U.S.C. § 154(D)**

William J. Marsden, Jr. (#2247)
Tara D. Elliott (#4483)
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19899-1114
Tel:  (302) 652-5070
marsden@fr.com
elliott@fr.com

Frank E. Scherkenbach
Craig R. Smith
225 Franklin Street
Boston, MA 02110
Tel:  (617) 542-5070
scherkenbach@fr.com
csmith@fr.com

Laura R. Braden
1425 K Street, N.W., Suite 1100
Washington, DC 20005
Tel:  (202) 783-5070
braden@fr.com

Attorneys for Defendants
MICROSOFT CORPORATION and DELL INC.

# TABLE OF CONTENTS

**Page**

I.    NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

II.    SUMMARY OF ARGUMENT ........................................................................................ 1

III.    STATEMENT OF FACTS ............................................................................................... 2

    A.    Arendi's Patent and Published Application ....................................................... 2

    B.    Arendi Never Provided Actual Notice of the Published Patent Application
To Microsoft ....................................................................................................... 4

    C.    Arendi's Positions .............................................................................................. 4

        1.    Arendi's Alleged Notice of Its Published Application ............................... 5

        2.    Arendi's Position on "Substantially Identical" Claims ............................... 5

IV.    ARGUMENT ................................................................................................................... 6

    A.    Legal Authority ................................................................................................... 6

    B.    Arendi Is Not Entitled to Provisional Damages Pursuant to 35 U.S.C.
§ 154(d) Because Arendi Did Not Provide Actual Notice of its Published
Application to Microsoft and the Claims of the '854 Patent Are Not
Substantially Identical to the Claims of the Published Application ...................... 9

        1.    Arendi Did Not Provide Actual Notice of its Published Application
to Microsoft .............................................................................................. 9

        2.    The Claims of the '854 Patent Are Not Substantially Identical to
the Claims of Arendi's Published Application .......................................... 11

V.    CONCLUSION ............................................................................................................. 13

# TABLE OF AUTHORITIES

**Page**

## CASES

*Arendi U.S.A., Inc. v. Microsoft Corp.,*
  168 Fed. Appx. 939, 2006 WL 380470 (Fed. Cir. 2006)..............................................5

*Bloom Eng'g Co., Inc. v. North Am. Mfg. Co., Inc.,*
  129 F.3d 1247 (Fed. Cir. 1997)..............................................12

*Classen Immunotherapies, Inc. v. King Pharms., Inc.,*
  403 F. Supp. 2d 451 (D. Md. 2005) ..............................................8, 9

*First Years, Inc. v. Munchkin, Inc.,*
  2008 WL 4283122 (W.D. Wis. Sept. 17, 2008) ..............................................8, 9

*Laitram Corp. v. NEC Corp.,*
  163 F.3d 1342 (Fed. Cir. 1998)..............................................12

*Pandora Jewelry, LLC v. Chamilia, LLC,*
  2008 WL 3307156 (D. Md. Aug. 8, 2008) ..............................................9, 12

*Stephens, et al. v. Tech Int'l, Inc.,*
  393 F.3d 1269 ( Fed. Cir. 2004)..............................................8, 9, 10, 11

*Telecomm. Sys., Inc. v. Mobile 365, Inc.,*
  2007 WL 2416539 (E.D. Va. Aug. 21, 2007)..............................................9

*Welker Bearing Co. v. PHD, Inc.,*
  550 F.3d 1090 (Fed. Cir. 2008)..............................................1

## STATUTES

35 U.S.C. § 112..............................................2

35 U.S.C. § 154(d) .............................................. passim

35 U.S.C. §§ 154(d)(1)(B) and (d)(2) ..............................................1

35 U.S.C. § 252..............................................12

## OTHER AUTHORITIES

Legislative history: H. Rep. No. 106-287, 106th Cong., 1st Sess. (1999) (accompanying
  H.R. 1907)..............................................7

Philippe Signore, "The New Provisional Rights Provision," 82 *J. Pat. & Trademark Off.*
  *Soc'y* 742 (2000) ..............................................7

## I.    NATURE AND STAGE OF THE PROCEEDINGS

This is a patent infringement case filed by Plaintiff Arendi Holding Ltd. ("Arendi") against Defendants Microsoft Corp. ("Microsoft") and Dell Inc. ("Dell") on February 24, 2009, the day the '854 patent issued.  Microsoft and Dell have counterclaimed that the patent is not infringed, and is invalid and unenforceable.  Although not pleaded in its complaint, Arendi subsequently alleged that it is entitled to provisional damages from Microsoft dating back to 2003.  Microsoft seeks by this motion to dispose of Arendi's provisional damages claim.

## II.    SUMMARY OF ARGUMENT

As a general matter, "[t]he patentee may of course obtain damages only for acts of infringement after the issuance of the patent."  *Welker Bearing Co. v. PHD, Inc.*, 550 F.3d 1090, 1095 (Fed. Cir. 2008).  An exception exists in cases where a patentee can prove that it qualifies for "provisional rights" under 35 U.S.C. § 154(d).  Under specific circumstances, provisional rights allow a patentee to obtain a reasonable royalty from one who committed acts that would constitute infringement of the invention as claimed in the published patent application, between the date on which the application was published and the date of the patent's issuance.  *Id.*  To qualify, however, the patentee must show both that it provided "actual notice" to the alleged infringer of the published patent application and that "the invention claimed in the patent is substantially identical to the invention claimed in the published patent application."  35 U.S.C. §§ 154(d)(1)(B) and (d)(2).

In this case, Arendi can meet neither requirement.  First, Arendi never provided "actual notice" of its published application to Microsoft.  In fact, the first time Arendi ever provided Microsoft with a copy of the published application was *after* the filing of the complaint in this case and *after* Microsoft questioned Arendi's basis for asserting provisional damages.  Until this

lawsuit, Arendi had never provided Microsoft with a copy of the published application or notified Microsoft of its provisional rights claim. In addition, since Arendi never explained what Microsoft acts allegedly gave rise to provisional damages, Arendi never gave Microsoft "actual notice" of its published application.

Second, the claims of Arendi's published application are not "substantially identical" to the claims of the '854 patent. The claims of the published application were rejected by the patent examiner and Arendi was forced to make changes to get them allowed. These changes resulted in claims that are substantially different from the original claims in the published patent application.[1]

Since Arendi cannot satisfy either of the two critical requirements of 35 U.S.C. § 154(d) as a matter of law, Microsoft's motion for summary judgment should be granted.

## III.   STATEMENT OF FACTS

### A.   Arendi's Patent and Published Application

Arendi's '854 patent is based on a patent application that was filed on August 6, 2001. [Ex. 1, U.S. Patent No. 7,496,854.][2] A copy of the patent application was published on May 9, 2002. Claim 1 of the published application (the only independent claim) reads:

> A method for information handling within a document created using a first application program comprising the steps of: entering a first information in the first application program; *automatically marking* the first information to alert the user that the first information can be utilized in a second application program; and responding to a user selection by inserting a second information into the document, the second information associated with the first information from a second application program.

---

[1]   Arendi's claims were also rejected under 35 U.S.C. § 112, first paragraph, as containing new subject matter that was not described in the specification. Pursuant to the Court's scheduling order, Defendants filed a separate motion for summary judgment of invalidity for failure to comply with 35 U.S.C. § 112. [D.I. 41.] That motion is pending.
[2]   Unless otherwise noted, all exhibit citations refer to the Declaration of Tara D. Elliott, filed contemporaneously herewith.

[Ex. 2, Published Patent Application No. US 2002/0054092 A1 (emphasis added).]

The patent examiner rejected both this claim and Arendi's arguments that the claim was allowable over the prior art.  In particular, the examiner stated that the "automatically marking" language of the proposed claim did not distinguish it from the prior art:

> The Applicant [Arendi] argues that whereas Applicants claimed invention automatically marks the text without user intervention, Pandit's highlighting of text requires the user to manually highlight or select the text.
>
> The Examiner disagrees for the following reasons: the claim language, as recited in claim 1, does not require the marking to be performed "without user intervention".  It is noted that an application program always perform an operation <u>automatically</u> whether the operation is initiated by the system or by the user.  For example, in Pandit's method, the step of highlighting is done by the system <u>automatically</u> once the user points to the text.  That is, the user <u>does not</u> have to instruct the system to specifically perform the step of highlighting in order for the highlighting to happen, but rather the user only has to point to the text for the highlighting to happen.  Therefore, *the difference between the methods of the Applicant and Pandit is for the marking step to happen "without user intervention" as argued by Applicant.  If that is what Applicant intends the claimed invention to be, Applicant is invited to incorporate the limitation of "without user intervention" into the independent claims in order to distinguish over the Pandit reference*.

[Ex. 3, June 27, 2003 Office Action, at 5 (emphasis added).]

Arendi amended claim 1 to remove the term "automatically" and insert the "without user intervention" limitation, as required by the patent examiner to distinguish the prior art.  The changes to claim 1 are shown below:

> A method for information handling within a document created using a first application program comprising the steps of: entering a first information in the first information program; ~~automatically~~ marking <u>without user intervention</u> the first information to alert the user that the first information can be utilized in a second application program; and responding to a user selection by inserting a second information into the document, the second information associated with the first information from a second application program.

Arendi also amended every other claim in the application to include the "without user intervention" limitation or similar language (e.g., "without direction from the operator").[3]

During subsequent prosecution of the patent application, Arendi repeatedly relied upon the new "without user intervention" limitation to distinguish the prior art:

> Neither the AddressMate program nor Pandit teach the element of "marking without user intervention" or "identifying without user intervention or designation the first information" either alone or in combination.

[Ex. 4, Jan 24, 2008 Amendment by Arendi.]

The patent examiner ultimately allowed the amended claims. None of the claims included the "automatically marking" language of the published application. Instead, all of the claims included the "without user intervention" limitation or similar language.

**B.      Arendi Never Provided Actual Notice of the Published Patent Application To Microsoft**

Microsoft did not receive a copy of the published application from Arendi until this litigation. Ironically, Arendi only did so on August 14, 2009 – in response to Microsoft's request that Arendi set forth the basis for its provisional damages claim.

**C.      Arendi's Positions**

Arendi's basis for its provisional damages claim was set forth in its October 13, 2009 interrogatory response. [Ex. 5, Oct. 13, 2009 Rog. Response.]

---

[3]   Arendi later made other amendments to the claims as well. It changed the term "marking" to "analyzing" and deleted the "alert the user that the first application can" language. After a year-and-a-half of additional changes and multiple rejections, Arendi came full circle and decided to cancel all of the then-pending claims and to add back in the claims as first amended *after* publication of the patent application, which required "marking without user intervention."

### 1.    Arendi's Alleged Notice of Its Published Application

Arendi says that it provided "actual notice" of its published patent application by producing one document, among thousands, during the prior litigation.[4]  The document is a notice from the Patent & Trademark Office (PTO) *to Arendi* that the PTO was *going to publish* a copy of its patent application.  [*See* Ex. 6: Arendi 6027, Arendi 14534-35, Arendi 15964-65, AHL 67315, and AHL 67317-20, which are multiple copies of the same document.][5]  The actual published patent application was not produced by Arendi during the prior litigation.

Arendi cited to two other documents in its interrogatory response, but did not state that either document provided "actual notice" of the published application.  One document is an interrogatory response from the prior litigation where Arendi identified the patent application number of the '854 patent.  Arendi did not identify the published application number in that interrogatory response.  The other document is a list of several references that the PTO cited during the prosecution of a Microsoft patent application; one of the references in the list is Arendi's published application.

### 2.    Arendi's Position on "Substantially Identical" Claims

Arendi's interrogatory response states its conclusion that the claims of the '854 patent are substantially identical to the claims of the published application, but provides no basis.  In particular, Arendi did not explain how the claims of the patent, which were amended to include

---

[4]   In July of 2002, Arendi sued Microsoft in Rhode Island for alleged infringement of U.S. Patent No. 6,323,853 ("the '853 patent") – the parent patent of the '854 patent.  Arendi alleged that the same "smart tags" software feature accused here infringed the '853 patent.  A jury trial was held in September of 2004, and the jury returned a verdict of no infringement.  The Court of Appeals for the Federal Circuit affirmed.  *Arendi U.S.A., Inc. v. Microsoft Corp.*, 168 Fed. Appx. 939, 2006 WL 380470 (Fed. Cir. 2006).

[5]   The other documents cited by Arendi in its interrogatory response relating to "actual notice" are letters from Arendi's counsel in the prior litigation indicating that they were producing a large collection of documents as part of discovery.  [*See* Ex. 7: MS0271185, MS0272180, AHL0067314, and AHL0067316.]

the "without user intervention" limitation and were plainly allowed in part on that basis, are

substantially identical to the claims of the published application, which do not include this

limitation and were rejected by the patent examiner.

## IV.    ARGUMENT

### A.    Legal Authority

As noted above, 35 U.S.C. § 154(d) requires that (1) the accused infringer have "actual

notice of the published patent application" and (2) "the invention as claimed in the patent is

substantially identical to the invention as claimed in the published patent application":

> (d) PROVISIONAL RIGHTS.-
> (1) IN GENERAL.- *In addition to other rights provided by this section, a patent shall include the right to obtain a reasonable royalty from any person who,* during the period beginning on the date of publication of the application for such patent under section 122(b), or in the case of an international application filed under the treaty defined in section 351(a) designating the United States under Article 21(2)(a) of such treaty, the date of publication of the application, and ending on the date the patent is issued-
> (A) (i) makes, uses, offers for sale, or sells in the United States the invention as claimed in the published patent application or imports such an invention into the United States; or
> (ii) if the invention as claimed in the published patent application is a process, uses, offers for sale, or sells in the United States or imports into the United States products made by that process as claimed in the published patent application; and
> (B) *had actual notice of the published patent application* and, in a case in which the right arising under this paragraph is based upon an international application designating the United States that is published in a language other than English, had a translation of the international application into the English language.
> (2) RIGHT BASED ON SUBSTANTIALLY IDENTICAL INVENTIONS.- *The right under paragraph (1) to obtain a reasonable royalty shall not be available under this subsection unless the invention as claimed in the patent is substantially identical to the invention as claimed in the published patent application*.

[35 U.S.C. § 154(d), emphasis added.]

The legislative history of 35 U.S.C. § 154(d) explains the "actual notice" and "substantially identical" claim requirements and why they are critical to limiting provisional rights:

> *The requirement of actual notice is critical*. The mere fact that the published application is included in a commercial database where it might be found is insufficient. *The published applicant must give actual notice of the published application to the accused infringer and explain what acts are regarded as giving rise to provisional rights.*
>
> *Another important limitation on the availability of provisional royalties is that the claims in the published application that are alleged to give rise to provisional rights must also appear in the patent in substantially identical form. To allow anything less than substantial identity would impose an unacceptable burden on the public. If provisional rights were available in the situation where the only valid claim infringed first appeared in substantially that form in the granted patent, the public would have no guidance as to the specific behavior to avoid between publication and grant.* Every person or company that might be operating within the scope of the disclosure of the published application would have to conduct her own private examination to determine whether a published application contained patentable subject matter that she should avoid. The burden should be on the applicant to initially draft a schedule of claims that gives adequate notice to the public of what she is seeking to patent.

[Ex. 8, H. Rep. No. 106-287, 106th Cong., 1st Sess. (1999) (accompanying H.R. 1907) at p. 55, emphasis added.]

Thus, according to the legislative history, "actual notice is critical" and requires that (1) the patentee "give actual notice of the published application to the accused infringer" and (2) "explain what acts are regarded as giving rise to provisional rights." The legislative history also emphasizes that provisional damages are limited to instances where "the claims in the published application that are alleged to give rise to provisional rights must also appear in the patent in substantially identical form." *Id. See also* Ex. 9, Philippe Signore, "The New Provisional Rights Provision," 82 *J. Pat. & Trademark Off. Soc'y* 742, 748-54 (2000).

To date, very few courts have construed the language of 154(d) and none of them appears to have consulted the legislative history.

The Federal Circuit addressed the issue of notice under 154(d) once, in the context of a claim relating to litigation misconduct. *See Stephens, et al. v. Tech Int'l, Inc.*, 393 F.3d 1269, 1275-76 ( Fed. Cir. 2004). In *Stephens*, the Federal Circuit held that a patentee's letter to an accused infringer to notify it of potential damages pursuant to 35 U.S.C. § 154(d) did not constitute litigation misconduct. *Id.*

> *Spectrum operated within its rights under section 154 when it notified Tech of potential infringement. The letter represented Spectrum's adherence to section 154's requirement that Tech be placed on notice of Spectrum's future right to obtain royalties if a patent issued in a form substantially identical to the published '222 application.* Second, Spectrum did not harass Tech by sending the section 154 notice while the '222 application was being amended. The application was actually amended after the section 154 notice was sent to Tech.

*Id.* (emphasis added). The Federal Circuit noted that 154(d) requires an affirmative act by the patentee to put the accused infringer on notice of the patentee's claim to potential future royalties. *Id.* The affirmative act was plaintiff's letter to defendant "placing [defendant] on notice of potential infringement of potentially-patentable subject matter contained in a separate patent application." *Id.* at 1275.

The District Court for the District of Delaware has not yet addressed Section 154(d), but other district courts, consistent with *Stephens*, have interpreted 154(d) at least to require affirmative steps by the patentee to notify the alleged infringer of the published application. *See, e.g., Classen Immunotherapies, Inc. v. King Pharms., Inc.*, 403 F. Supp. 2d 451, 457-58 (D. Md. 2005) (denying motion for summary judgment of no provisional rights where plaintiff "clearly took affirmative steps to inform [defendant] of the existence of the 472 patent application" even though plaintiff did not make a specific charge of infringement by a specific defendant product); *First Years, Inc. v. Munchkin, Inc.*, 2008 WL 4283122 (W.D. Wis. Sept. 17, 2008) (holding that plaintiffs' letter to defendant identifying the published patent application constitutes sufficient notice, even though patentee did not provide notice of the specific manner by which defendant

-8-

was believed to be practicing the inventions claimed in the patent application); *Telecomm. Sys., Inc. v. Mobile 365, Inc.*, 2007 WL 2416539, at *5 (E.D. Va. Aug. 21, 2007) (denying motion for summary judgment of no provisional damages because there was a question of fact as to whether plaintiff provided actual notice to defendant in the context of licensing discussions).

Finally, one district court has granted summary judgment of no provisional damages where the claims of the issued patent were not "substantially identical" to the claims of the published application because the issued patent claims had been amended to overcome prior art. *Pandora Jewelry, LLC v. Chamilia, LLC*, 2008 WL 3307156, at *9-10 (D. Md. Aug. 8, 2008) ("Because the issued patent is not substantially identical to the published patent application, Pandora has no provisional rights to assert.")

    **B.**    **Arendi Is Not Entitled to Provisional Damages Pursuant to 35 U.S.C. § 154(d) Because Arendi Did Not Provide Actual Notice of its Published Application to Microsoft and the Claims of the '854 Patent Are Not Substantially Identical to the Claims of the Published Application**

        **1.**    **Arendi Did Not Provide Actual Notice of its Published Application to Microsoft**

Arendi never provided "actual notice" of the published application to Microsoft. The first time Arendi gave Microsoft a copy of the published application and notified Microsoft of its provisional rights was *after* the filing of the complaint in this case. Even then, Arendi never explained what Microsoft acts give rise to Arendi's alleged provisional damages, as the legislative history of the statute requires and as *Stephens* suggests.[6]

---

[6] A couple of district courts have held that actual notice under 154(d) is satisfied even if the patentee did not identify the specific manner by which the defendant was believed to be infringing the published application. *See Classen*, 403 F. Supp. 2d at 457-58; *First Years*, 2008 WL 4283122. Neither case appears to have considered the legislative history of 154(d), which says the patentee must "explain what acts are regarded as giving rise to provisional rights," or whether a more relaxed requirement would be consistent with this history. Neither case cited to the Federal Circuit's decision in *Stephens*, which suggests that the patentee complied with the

Rule 154(d) – as explained in the legislative history and by the Federal Circuit – requires an affirmative act by the patentee to put the accused infringer on notice of the patentee's claim to future royalties.  Because Arendi took no such affirmative act, let alone explained what acts allegedly gave rise to its provisional rights, Microsoft's motion for summary judgment should be granted.

The sole basis for Arendi's claim of "actual notice" is a document that was sent from the PTO to Arendi indicating that the PTO was going to publish the patent application.  This document was produced by Arendi as part of its over 17,000-page document production during discovery in the prior litigation.  Arendi did not produce a copy of the published application itself, let alone draw it to Microsoft's attention in any way.

The PTO's letter to Arendi of the future publication of the patent application does not satisfy the "actual notice" requirement of 154(d).  Nothing about the PTO's letter to Arendi would put Microsoft on notice of the published application or that Arendi was seeking provisional damages based on the publication of the application.  Moreover, the PTO letter could not possibly explain what acts Arendi regarded as giving rise to provisional rights.  Arendi's alleged notice would eviscerate the "critical" requirement of actual notice and be inconsistent with both the legislative history and *Stephens*.

Arendi does not claim that any other document provided "actual notice" of its published application.  Instead, Arendi said that it notified Microsoft of the patent application number for the '854 patent – not even the ***published*** application number, which is different – during the prior litigation.  [Ex. 5 at 2]  Identifying a patent application number, however, did not put Microsoft

---

notice requirement of 154(d) by placing the defendant on notice of the application ***and*** the potential infringement.  *Stephens*, 393 F.3d at 1275-76.  In the present case, Arendi did not notify Microsoft of the published application ***or*** the potential infringement, and therefore its provisional rights claim should be denied for either independent reason.

on notice of the published application.  Nor did it notify Microsoft of any claim to provisional damages or any acts that would give rise to such damages.

Finally, Arendi has indicated that the PTO notified Microsoft of Arendi's published application during prosecution of a Microsoft patent application.  A mere list of references provided to Microsoft by the PTO does not satisfy Arendi's obligation to put Microsoft on notice of its published application.  Also, as a communication from the PTO to Microsoft, it could not notify Microsoft about any provisional rights sought by Arendi or what acts would give rise to such damages.

In sum, Arendi's position is that it provided "actual notice" without ever providing Microsoft with a copy of the published application prior to this lawsuit, without ever notifying Microsoft of its provisional rights claim, and without ever identifying what acts gave rise to provisional damages.  This is inconsistent with what the statute says, what Congress intended, and what the Federal Circuit said in *Stephens*.  Arendi was required to give actual notice of the published application to Microsoft and explain what acts are regarded as giving rise to provisional rights.  Arendi did neither and therefore its claim for provisional damages should be denied as a matter of law.

### 2.   The Claims of the '854 Patent Are Not Substantially Identical to the Claims of Arendi's Published Application

The claims of the '854 patent are not "substantially identical" to the claims of Arendi's published application.  As explained above, the claims of the published application were rejected by the patent examiner; likewise, Arendi's arguments that the claims of the published application were allowable over the prior art were rejected.  In particular, the patent examiner identified the specific limitation that would need to be added to the claim to distinguish it from the prior art.

Therefore, the difference between the methods of the Applicant and Pandit is for the marking step to happen "without user intervention" as argued by Applicant.  If

> that is what Applicant intends the claimed invention to be, Applicant is invited to incorporate the limitation of "without user intervention" into the independent claims in order to distinguish over the Pandit reference.

[Ex. 3, June 27, 2003 Office Action, at 5.] Arendi thereafter added the necessary "without user intervention" limitation to the claim and that limitation appears in the issued claims.

Having amended the claim language, as suggested by the examiner, to overcome prior art, Arendi cannot now argue that the amended claim is substantially identical to the claim in the published patent application. In construing the same "substantially identical" claim scope requirement in the context of 35 U.S.C. § 252, the Federal Circuit has found that amendments which were necessary to overcome prior art were substantive changes, rendering the amended claims *not* substantially identical to those in the original patent. *Bloom Eng'g Co., Inc. v. North Am. Mfg. Co., Inc.*, 129 F.3d 1247, 1251 (Fed. Cir. 1997); *see also Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1348 (Fed. Cir. 1998) (noting that, although the court did not apply a *per se* rule that an amended claim is not identical to the original claim, "it is difficult to conceive of many situations in which the scope of a rejected claim that becomes allowable when amended is not substantively changed by the amendment"). District courts have followed this precedent in the provisional rights context. *See Pandora Jewelry, LLC v. Chamilia, LLC*, 2008 WL 3307156 (D. Md. Aug. 8, 2008) (applying Section 252 precedent to the "substantially identical" requirement of 154(d) and granting summary judgment that patentee was not entitled to provisional rights because the issued patent claim had been amended to overcome prior art).

Arendi was forced to change the claims of the published application to get them allowed. These changes resulted in claims that are substantively different from the claims in the published patent application. Accordingly, Arendi cannot satisfy the "substantially identical" claim requirement of 154(d) as a matter of law and summary judgment is warranted for this independent reason.

## V.  CONCLUSION

For the foregoing reasons, Microsoft respectfully requests that its motion for summary judgment that Arendi is not entitled to provisional damages pursuant to 35 U.S.C. § 154(d) be granted.

Dated:  November 20, 2009                    FISH & RICHARDSON P.C.

                                             By:     /s/ Tara D. Elliott
                                                 William J. Marsden, Jr. (#2247)
                                                 Tara D. Elliott (#4483)
                                                 222 Delaware Avenue, 17th Floor
                                                 P.O. Box 1114
                                                 Wilmington, DE 19899-1114
                                                 Tel:  (302) 652-5070
                                                 marsden@fr.com
                                                 elliott@fr.com

                                                 Frank E. Scherkenbach
                                                 Craig R. Smith
                                                 225 Franklin Street
                                                 Boston, MA 02110
                                                 Tel:  (617) 542-5070
                                                 scherkenbach@fr.com
                                                 csmith@fr.com

                                                 Laura R. Braden
                                                 1425 K Street, N.W., Suite 1100
                                                 Washington, DC 20005
                                                 Tel:  (202) 783-5070
                                                 braden@fr.com

                                             Attorneys for Defendants
                                             MICROSOFT CORPORATION and DELL INC.

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2009, I electronically filed with the Clerk of Court DEFENDANT MICROSOFT CORPORATION'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT THAT ARENDI IS NOT ENTITLED TO PROVISIONAL DAMAGES PURSUANT TO 35 U.S.C. § 154(D) using CM/ECF which will send electronic notification of such filing(s) to the following counsel:

**VIA ECF AND BY EMAIL**

John W. Shaw
Michele Sherretta Budicak
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building, 17th Floor
1000 West Street
P.O. Box 391
Wilmington, DE 19899-0391

**VIA ECF AND BY EMAIL**

John M. Desmarais
Robert A. Appleby
Jon T. Hohenthaner
Joseph A. Loy
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022-4611

/s/ Tara D. Elliott
Tara D. Elliot