## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

Arendi Holding Ltd.,                              :
                                                  :
                          Plaintiff,              :
                                                  :
          v.                                      :          Civ. No. 09-119-JJF-LPS
                                                  :
Microsoft Corporation, et al.,                    :
                                                  :
                          Defendants.             :

## REPORT AND RECOMMENDATION
## ON MOTION FOR SUMMARY JUDGMENT

Plaintiff Arendi Holding Ltd. ("Plaintiff" or "Arendi") filed this patent infringement

action against defendants Microsoft Corporation ("Microsoft") and Dell Inc. ("Dell," and with

Microsoft, "Defendants") for infringement of its U.S. Patent No. 7,496,854, entitled "Method,

System and Computer Readable Medium for Addressing Handling from a Computer Program"

("'854 patent").  Presently pending before the Court is Microsoft's motion for summary

judgment that Arendi is not entitled to provisional damages pursuant to 35 U.S.C. § 154(d) (the

"Motion").  (D.I. 132)  For the reasons that follow, I recommend that Microsoft's Motion be

granted.

## BACKGROUND

**A.      Procedural Background**

This action was filed on February 24, 2009 (D.I. 1), the same day the '854 patent issued.

On May 21, 2009, Judge Farnan referred the case to me to resolve all discovery disputes.  (D.I.

1

19) The parties initially stipulated to an expedited schedule, with fact discovery to close on November 20, 2009, expert discovery to close on February 22, 2010, and trial to commence on May 17, 2010. (D.I. 37)

During discovery, it became clear that Arendi was seeking damages for a far lengthier period than Microsoft had understood when the initial schedule had been devised. Microsoft had believed that Arendi was seeking damages -- and, therefore, discovery -- only for the period beginning February 24, 2009. In the course of fact discovery, however, Arendi made clear that it seeks, among other relief, its provisional rights to a reasonable royalty under 35 U.S.C. § 154(d) for Microsoft's alleged infringement of claims 1, 3, 4, 6, and 7.[1] Arendi claims entitlement to such provisional damages for the period January 7, 2003 through the February 24, 2009 issuance of the '854 patent. (*See* Transcript of Oct. 21, 2009 teleconference (D.I. 116 and hereinafter "10/21/09 Tr.") at 12-13; *see also* D.I. 134 at 1; D.I. 138 at 4.)

In the course of resolving the parties' discovery and scheduling disputes, I ordered that Microsoft provide Arendi discovery relating to Arendi's provisional damages claim. I also authorized Microsoft to file the instant Summary Judgment Motion. I further entered a new

---

[1] Arendi's claim to provisional damages pursuant to § 154(d) is not expressly pled in either the original or amended complaints. (D.I. 1; D.I. 136) This does not preclude Arendi from seeking such damages. *See generally Classen Immunotherapies, Inc. v. King Pharmaceuticals, Inc.*, 403 F. Supp. 2d 451, 457 (D. Md. 2005) ("Although Classen does not claim a violation of § 154(d) in its complaint, Classen describes the nature of the suit as 'a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.' . . . § 154(d) expands the scope of patent infringement rather than creating a new cause of action. . . . Therefore, Classen need not amend its complaint to include a claim under § 154(d)."). Given the way Arendi chose to frame its complaints, it was understandable that Microsoft did not realize until well into fact discovery that Arendi was seeking provisional damages, which is what necessitated a change in the schedule governing this case. (D.I. 116 at 43-45; D.I. 112; D.I. 128)

schedule, in recognition of the reality that the case was significantly larger than Defendants had earlier recognized.  (D.I. 128)  Under the amended schedule, fact discovery closed on March 17, 2010, expert discovery closes on June 30, 2010, and trial begins on December 6, 2010.  On November 9, 2009, Judge Farnan revised the referral to include all pretrial proceedings through and including the pretrial conference.  (D.I. 119)

Briefing on Microsoft's Motion was completed in December 2009.  I heard oral argument on January 21, 2010.  (Transcript of Jan. 21, 2010 Hearing (D.I. 154) (hereinafter "1/21/10 Tr."))

**B.      Arendi's '853 Patent**

The patent-in-suit, the '854 patent, is the second of two related U.S. patents directed towards various aspects of Arendi's method, system, and computer readable medium for name and address handling.  (D.I. 138 at 3; D.I. 139 Ex. J; D.I. 139 Ex. K at ARENDI6096)  Arendi filed the first of the two patent applications on November 10, 1998, which issued as U.S. Patent No. 6,323,853 ("'853 patent") on November 27, 2001.  (D.I. 138 at 3-4; D.I. 139 Ex. J)

**C.      Arendi's '134 Application**

Arendi filed the second of the two patent applications as a continuation application on August 6, 2001.  (D.I. 138 at 4; D.I. 139 Exs. H & J)  It was originally given an application number of 09/923,134 (hereinafter the "'134 Application").  (D.I. 139 Ex. A at ARENDI6027)

**D.      The Published Application**

The '134 Application was published by the U.S. Patent & Trademark Office ("PTO") on May 9, 2002 as U.S. Patent Publication No. US-2002-00545092-Al (hereinafter the "Published Application").  (D.I. 138 at 4; D.I. 139 Exs. H & J)  This Published Application ultimately issued as the '854 patent-in-suit on February 24, 2009.  (D.I. 138 at 4; D.I. 139 Ex. J)

3

### E.     The Rhode Island Litigation

In July 2002, Arendi sued Microsoft in the District of Rhode Island for alleged infringement of the '853 patent ("Rhode Island Litigation"). (D.I. 134 at 5 n.4; D.I. 138 at 4)  In the Rhode Island Litigation, Arendi alleged that the same "smart tags" software feature accused in the instant litigation infringed the '853 patent. (D.I. 134 at 5 n.4; *see also* D.I. 138 at 4 ("Indeed, the parties have been engaged in years of litigation over the patented technology, beginning in 2002 when Arendi brought suit against Microsoft for alleged infringement of the earlier '853 patent . . . .").)[2]

### F.     Arendi's Response to Interrogatories in the Rhode Island Litigation

On December 20, 2002, in the Rhode Island Litigation, Arendi responded to Microsoft's interrogatory seeking identification of "patents or patent applications that are related to the '853 Patent . . . or that describe or disclose any invention disclosed in the '853 Patent" by identifying, among others, "U.S. Application No. 09/923,134." (D.I. 139 Ex. F at 13-14)  In other words, Arendi identified for Microsoft Arendi's '134 Application.

### G.     Arendi's Document Production

On January 7, 2003, in the Rhode Island Litigation, Arendi produced to Microsoft documents with bates numbers ARENDI0001-ARENDI6876.  The full text of Arendi's cover letter accompanying the production of these documents is reproduced below:

> Enclosed in two litigation boxes are documents bearing document nos. Arendi 0001 – Arendi 6876, produced by Arendi in the above-identified matter [i.e., the Rhode Island Litigation].

---

[2]The Rhode Island Litigation ended with a September 2004 jury verdict of non-infringement and judgment for Microsoft, which was affirmed on appeal. *See Arendi U.S.A., Inc. v. Microsoft Corp.,* 168 Fed. Appx. 939 (Fed. Cir. 2006); *see also* D.I. 138 at 5 n.4.

> Pursuant to the agreement between the parties, the enclosed documents shall be maintained by you and your firm as counsel for Microsoft on an outside attorneys eyes only basis until the Protective Order is entered by the Court, at which time the provisions of the Protective Order will apply.

(D.I. 139 Ex. C at MS0271185)

Included among the nearly 7,000 pages of documents contained in Arendi's January 7, 2003 production were 126 pages that related to the Published Application (and, therefore, related to the eventually-issued '854 patent). (*See* D.I. 139 Ex. K (reproducing the entirety of the portion of Arendi's January 7, 2003 document production that related to the Published Application, which is documents marked ARENDI6012-ARENDI6137).) These 126 pages of documents consist of: (i) the "Notice of Publication of Application," (ii) drafts of the Published Application, and (iii) other prosecution history documents relating to the Published Application. Each of these is described more fully below.[3]

### 1.    Notice of Publication of Application

As part of its January 7, 2003 production of documents in the Rhode Island Litigation, Arendi provided to Microsoft a copy of a notice from the PTO to Arendi that the PTO was going to be publishing Arendi's '134 Application as the Published Application. (D.I. 135 Ex. 6 at

---

[3]Arendi, in its First Supplemental Response to Interrogatory No. 14 in the instant action, described the basis for its assertion that Microsoft had actual notice of the Published Application "at least as early as January 7, 2003." (D.I. 135 Ex. 5 at 4-5) Much of the materials Arendi identified in its interrogatory response were not produced to Microsoft until after January 7, 2003. (*See, e.g.*, ARENDI14534-AREND14535, ARENDI15964-ARENDI15965 (found in D.I. 139 Ex. L & Ex. N, and produced to Microsoft April 12, 2004, as shown in D.I. 139 Ex. D at MS0272180).) Therefore, these materials do not support Arendi's contention that Microsoft had actual notice of the Published Application by January 7, 2003. Arendi has not argued for a date of actual notice that is subsequent to January 7, 2003. Nor have I found a basis for such an argument in the record.

ARENDI6027)[4] This "Notice of Publication of Application" (hereinafter "Notice of

Publication") is addressed to Arendi's patent prosecution counsel and discloses that the title of

the application is "Method, system and computer readable medium for addressing handling from

a computer program." (*Id.*) The Notice of Publication also contains: the '134 Application

Number (09/923,134), the Publication No. (US-2002-0054092-A1), the filing date (August 6,

2001), the "Atty. Docket No." (103176-0001C1), and the first named applicant ("Atle Hedloy").

(*Id.*) The text of this Notice of Publication is reproduced below:

> The above-identified application will be electronically published as a patent
> application publication pursuant to 37 C.F.R. 1.211, et seq. The patent
> application publication number and publication date are set forth above.
>
> The publication may be accessed through the USPTO's publically available
> Searchable Databases via the Internet at www.uspto.gov. The direct link to access
> the publication is currently http://www.uspto.gov/patft/.
>
> The publication process established by the Office does not provide for mailing a
> copy of the publication to applicant. A copy of the publication may be obtained
> from the Office upon payment of the appropriate fee set forth in 37 CFR 1.19(a)(1).
> Orders for copies of patent application publications are handled by the USPTO's
> Office of Public Records. The Office of Public Records can be reached by
> telephone . . . by facsimile . . . by mail addressed to the United States Patent and
> Trademark Office . . . or via the Internet.
>
> In . . . addition, information on the status of the application, including the mailing
> date of Office actions and the dates of receipt of correspondence filed in the
> Office, may also be accessed via the Internet through the Patent Electronic
> Business Center at www.uspto.gov using the public side of the Patent Application
> Information and Retrieval (PAIR) system. The direct link to access this status
> information is currently http://pair.uspto.gov/. Prior to publication, such status

---

[4]Microsoft admits that its litigation counsel in the Rhode Island Litigation received the
Notice of Publication (ARENDI6027) on January 7, 2003. (D.I. 139 Ex. E at 3) On April 12,
2004, Arendi provided Microsoft additional copies of this same Notice of Publication of
Application. (D.I. 135 Ex. 6 at ARENDI14534, ARENDI15964; D.I. 139 Ex. D at MS0272180)
Microsoft admits that it received these additional copies as well. (D.I. 139 Ex. E at 3-4
(admitting receipt of ARENDI14534))

information is confidential and may only be obtained by applicant using the private side of PAIR.

Further assistance in electronically accessing the publication, or about PAIR, is available by calling the Patent Electronic Business Center . . . .

(*Id.*)

## 2.    Drafts of the Application

As part of the January 7, 2003 production in the Rhode Island Litigation, Arendi produced to Microsoft two drafts of its '134 Application, as well as two "Preliminary Amendments" to it. (*See* D.I. 139 Ex. K.)  Specifically, Arendi produced: an undated draft of the '134 Application (*id.* at ARENDI6097-ARENDI6135), an undated Preliminary Amendment (*id.* at ARENDI6095-ARENDI6096), a September 7, 2001 draft of the '134 Application (*id.* at ARENDI6060-ARENDI6082), and a December 17, 2001 "Preliminary Amendment" to Arendi's '134 Application (*id.* at ARENDI6037-ARENDI6041).

## 3.    Other Prosecution History Documents

The remainder of Arendi's January 7, 2003 production that relates to the '134 Application consists of the following: documents relating to a June 10, 2002 Notice of Recordation of Assignment Document relating to Arendi's '134 Application (D.I. 139 Ex. K at ARENDI6012-ARENDI6026); an April 2002 "Notice of New or Revised Projected Publication Date" relating to the '134 Application (*id.* at ARENDI6028); a November 8, 2001 Information-Disclosure Statement identifying references relating to the '134 Application (*id.* at ARENDI6045-ARENDI6049); documents indicating that as of October 24, 2001 "no document has been found in the assignment records" for the '134 Application (*id.* at ARENDI6050-ARENDI6051); documents relating to a notice to file corrected application papers (*id.* at ARENDI6057-

ARENDI6059); a 1998 Declaration, Power of Attorney and Petition (*id.* at ARENDI6136-

ARENDI6137); and transmittal documents exchanged between Arendi's prosecution counsel and

the PTO (*id.* at ARENDI6029-ARENDI6036, ARENDI6042-ARENDI6044, ARENDI6052-

ARENDI6056, ARENDI6083-ARENDI6094).

**H.     Claim 1 of the Published Application**

As published on May 9, 2002, the Published Application contains only one independent

claim, namely claim 1. (D.I. 135 Ex. 2 at 6) Claim 1 of the Published Application reads:

> A method for information handling within a document created using a first
> application program comprising the steps of:
>
> entering a first information in the first application program;
>
> ***automatically marking*** the first information to alert the user that the first
> information can be utilized in a second application program;
>
> and responding to a user selection by inserting a second information into the
> document, the second information associated with the first information from a
> second application program.

(*Id.* (emphasis added))

**I.     Claim 1 of the '854 Patent**

During prosecution, Arendi amended claim 1 of the Published Application to remove the

term "automatically marking" and insert in its place "marking without user intervention." Hence,

claim 1 of the '854 patent reads:

> A method for information handling within a document created using a first
> application program comprising the steps of:
>
> entering a first information in the first application program;
>
> ***marking without user intervention*** the first information to alert the user that the
> first information can be utilized in a second application program; and

8

responding to a user selection by inserting a second information into the document, the second information associated with the first information from a second application program.

(D.I. 135 Ex. 1 col. 10 lines 41-51 (emphasis added))

## LEGAL STANDARDS

A grant of summary judgment is appropriate only where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 415 U.S. 574, 586 n.10 (1986). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Id.* at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podobnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine

9

only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

## DISCUSSION

### A.    Provisional Rights Under § 154(d)

Generally, a "patentee may . . . obtain damages only for acts of infringement after the issuance of the [] patent." *Welker Bearing Co. v. PHD, Inc.*, 550 F.3d 1090, 1095 (Fed. Cir. 2008) (internal quotation marks omitted). However, an exception exists in cases where a patentee can prove that it qualifies for "provisional rights" under 35 U.S.C. § 154(d). When present, provisional rights allow a patentee to obtain a reasonable royalty from one who committed acts that would constitute infringement of the invention as claimed in the published patent application, between the date on which the application was published and the date of the patent's issuance. *See* 35 U.S.C. § 154(d)(1).

Section 154(d) provides:

(d) <u>Provisional rights</u>. –

    (1) <u>In general</u>. – In addition to other rights provided by this section, a patent shall include the right to obtain a reasonable royalty from any person who, during the period beginning on the date of publication of the application for such patent under section 122(b), or in the case of an international application filed under the treaty defined in section 351(a) designating the United States under Article 21(2)(a) of such treaty, the date of publication of the application, and ending on the date the patent is issued –

        (A)(i) makes, uses, offers for sale, or sells in the United States the invention as claimed in the published patent application or imports such an invention into the United States; or

        (ii) if the invention as claimed in the published patent application is a process, uses, offers for sale, or sells in the United States or imports into the United States products made by that process as claimed in the published patent application; and

        (B) had actual notice of the published patent application and, in a case in which the right arising under this paragraph is based upon an international application designating the United States that is published in a language other than English, had a translation of the international application into the English language.

    (2) <u>Right based on substantially identical inventions</u>. – The right under paragraph (1) to obtain a reasonable royalty shall not be available under this subsection unless the invention as claimed in the patent is substantially identical to the invention as claimed in the published patent application.

35 U.S.C. § 154(d)(1), (2).[5]

Both parties have referred the Court to the legislative history that preceded Congressional

adoption of Section 154(d).  Specifically, a House Report states:

    The requirement of actual notice is critical.  The mere fact that the published application is included in a commercial database where it might be found is insufficient.  The published applicant must give actual notice of the

---

[5] 35 U.S.C. § 154(d)(3) – Time limitation on obtaining a reasonable loyalty – is not at issue here.

published application to the accused infringer and explain what acts are regarded as giving rise to provisional rights.

Another important limitation on the availability of provisional royalties is that the claims in the published application that are alleged to give rise to provisional rights must also appear in the patent in substantially identical form. To allow anything less than substantial identity would impose an unacceptable burden on the public. If provisional rights were available in the situation where the only valid claim infringed first appeared in substantially that form in the granted patent, the public would have no guidance as to the specific behavior to avoid between publication and grant. Every person or company that might be operating within the scope of the disclosure of the published application would have to conduct her own private examination to determine whether a published application contained patentable subject matter that she should avoid. The burden should be on the applicant to initially draft a schedule of claims that gives adequate notice to the public of what she is seeking to patent.

(D.I. 135 Ex. 8, H. Rep. No. 106-287, at 55, 106th Cong., 1st Sess. (1999) (accompanying H.R. 1907) (hereinafter referred to as "House Report"))[6]

**B.    The Parties' Contentions**

The parties agree that in order for Arendi to be entitled to provisional damages, Section 154(d) requires that Arendi prove that Microsoft had "actual notice" of (at least) Arendi's Published Application, and that claim 1 of the Published Application is "substantially identical" to claim 1 of the issued '854 patent-in-suit. While Microsoft insists that Arendi cannot establish either of these prerequisites to provisional damages, Arendi counters that the record contains sufficient evidence to establish both of Section 154(d)'s requirements.

Specifically, Microsoft contends that "actual notice" must be interpreted in light of the legislative history. While the statute itself does not define "actual notice," in Microsoft's view the legislative history plainly states what is required. In particular, the legislative history

---

[6]The parties agree that there is no other legislative history that is even arguably relevant to the issues presented here. (1/21/10 Tr. at 48, 68-69)

establishes that "actual notice" must be provided by an affirmative act of the patent applicant and the notice must include "actual notice" of the acts an alleged infringer is engaged in that allegedly constitute infringement. Microsoft asserts that Arendi's inclusion of the Notice of Publication among thousands of documents Arendi produced to Microsoft in the Rhode Island Litigation is inadequate.

Microsoft further asserts that claim 1 of Arendi's Published Application is not "substantially identical" to claim 1 of the '854 patent. Microsoft explains that claim 1 of the Published Application was initially rejected by the Patent Examiner, then changed by the applicant, and only thereafter allowed. Through this process, the Published Application's claim term "automatically marking" was rejected and replaced with the claim term "marking without user intervention," which appears in the issued patent.

Arendi contends, by contrast, that Section 154(d) is unambiguous, making resort to the legislative history unnecessary and improper. To Arendi, the statute unambiguously requires notice only of the published patent application, not also notice of the infringement. Arendi contends that its provision of the Notice of Publication to Arendi in the Rhode Island Litigation in its January 7, 2003 document production provided Microsoft with actual notice of the Published Application. Arendi adds that on the same date it provided Microsoft with prosecution history documents relating to the Published Application.

With respect to the "substantially identical" requirement, Arendi contends that the change in terminology – from "automatically marking" to "marking without user intervention" – was not substantive, but merely a clarification. Arendi asserts that the scope of claim 1 of the Published Application is substantially identical to the scope of claim 1 of the '854 patent.

### C.     **Discussion**

#### 1.      **"Actual Notice"**

Statutory interpretation begins with the language of the statute. *See Caminetti v. United States*, 242 U.S. 470, 485 (1917) ("[T]he meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain . . . the sole function of the courts is to enforce it according to its terms."). With respect to the "actual notice" requirement, the pertinent statutory provision is § 154(d)(1)(B), which provides:

> In addition to other rights provided by this section, a patent shall include the right to obtain a reasonable royalty from any person who . . . had actual notice of the published patent application . . . .[7]

The statutory language unambiguously focuses on the status of the alleged infringer, not the acts of the patent applicant. The statute provides that provisional damages may be available from "any person who . . . had actual notice." The statute does not require that the actual notice received by the alleged infringer have come from the patent applicant. Therefore, there is no requirement that the patent applicant take an affirmative act to provide such notice to the alleged infringer (if the applicant can prove that the alleged infringer came to have actual notice through some other means).[8]

---

[7]Of course, to obtain provisional damages, § 154(d) also requires that the patentee prove that the alleged infringer engaged in infringing conduct and that the invention claimed in the patent is substantially identical to the invention as claimed in the published patent application. I am omitting these additional requirements from my discussion only because I am focused on the "actual notice" requirement.

[8]In the instant case, Arendi's position is that it affirmatively provided notice to Microsoft, in the form of the January 7, 2003 document production in the Rhode Island Litigation. Arendi is not relying on any notice of its Published Application that Microsoft might have obtained in some manner other than directly from Arendi. *See generally* 1/21/10 Tr. at 41-46 (Arendi's

The statute also unambiguously provides that what the alleged infringer must have actual notice of is "the published patent application." Thus, there is no requirement that the alleged infringer be put on notice of the conduct the patent applicant believes constitutes infringement. *See The First Years, Inc. v. Munchkin, Inc.*, 2008 WL 4283122, at *2 (W.D. Wis. Sept. 17, 2008) (holding that § 154(d) contains "no requirement that a patentee provide notice of the specific manner by which a defendant is believed to be practicing the inventions claimed in a patent application"). Although the legislative history states that the "published applicant must give actual notice of the published application to the accused infringer and explain what acts are regarded as giving rise to provisional rights," House Report at 55, these requirements were not enacted in the statute itself. It would be improper to read these requirements into a statute which unambiguously does not include them.[9]

---

counsel arguing that whether § 154(d) requires affirmative acts of patentee need not be decided because here there were affirmative acts by patentee); *id.* at 6 (Microsoft stating it did not believe Arendi was relying on anything other than notice which came from Arendi, a contention Arendi did not dispute).

As part of its response to Microsoft's interrogatory inquiring as to the basis for Arendi's contention that Microsoft had actual notice of the Published Application by January 7, 2003, Arendi stated: "The United States Patent and Trademark Office further notified Microsoft of Published Patent Application No. US 2002/0054092 Al during the prosecution of United States Design Patent No. D565,588, assigned to Microsoft, as evidenced by: AHL0067198-0067228." (D.I. 135 Ex. 5 at 4-5) It does not appear that these materials are in the record before me. Nor is there any indication as to whether they predate January 7, 2003. Consequently, I have not considered the impact, if any, of these materials.

[9]This conclusion is bolstered by another patent statute, 35 U.S.C. § 287(a), which permits a patentee to obtain damages for infringement occurring after "the infringer was *notified of the infringement*" (emphasis added). That Congress chose to require only "actual notice of the published patent application" in § 154(d), and did not adopt § 287(a)'s requirement of notice "of the infringement," strongly suggests that "actual notice of infringement" is not required by § 154(d). *See First Years*, 2008 WL 4283122, at *2.

15

As to what constitutes actual notice, however, § 154(d) is silent. Multiple reasonable definitions are possible. As such, it is appropriate for the court to consider the legislative history, among other authorities, to determine what is meant by § 154(d)'s requirement of "actual notice." *See, e.g., Davis v. United States*, 495 U.S. 472, 479 (1990) (referring to legislative history to construe statutory phrase "for the use of," which, "on its face . . . could support any number of different meanings"); *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 523 n.6 (1984) ("The Bankruptcy Code furnishes no express definition of an executory contract . . . but the legislative history to [it] indicates that Congress intended the term to mean a contract 'on which performance is due to some extent on both sides.'") (internal citations omitted; quoting H.R. Rep. No. 95-595, p. 347 (1977)); *Wilson v. Mansfield*, 506 F.3d 1055, 1059 (Fed. Cir. 2007) (turning to legislative history to construe 38 U.S.C. § 5103(a), which "on its face does not address" issue in dispute); *Ross v. Hotel Employees and Restaurant Employees Int'l Union*, 266 F.3d 236, 245 (3d Cir. 2001) ("Although we do not consider the word 'appropriate' an ambiguous term in and of itself, to the extent that the text of the LMRDA does not adequately define the term in context, and thereby definitively establish what remedies are 'appropriate' under Title III, we are compelled to consult the statute's legislative history."); *Smith v. Husband*, 376 F. Supp. 2d 603, 610 (E.D. Va. 2005) ("If the language of the statute is plain, the Court ends the inquiry; if the language is ambiguous, the Court must consider other factors such as legislative history.").[10]

Review of the legislative history and caselaw leads to two conclusions. First, the

---

[10]As Microsoft observes, no other court appears to have considered § 154(d)'s legislative history. (1/21/10 Tr. at 21; D.I. 134 at 7)

requirement of "actual notice" means that the alleged infringer must be in possession of

something more than merely constructive notice. As the House Report (at p. 55) states, "[t]he

requirement of actual notice is critical." The word "actual" in the statute must mean something.

2A Sutherland Statutory Construction § 46:6 (7th ed.) ("It is an elementary rule of construction

that effect must be given, if possible, to every word, clause and sentence of a statute.") (internal

quotation marks omitted). Thus, a patentee claiming an entitlement to provisional damages must

prove that the alleged infringer actually had notice of the publication of the patent application

that eventually became the patent-in-suit. It is not enough that the alleged infringer had

information from which it could or should have become aware of the existence of the published

patent application. For instance, "[t]he mere fact that the published application is included in a

commercial database where it might be found is insufficient." House Report at 55.

Second, a letter from the patent applicant drawing the alleged infringer's attention to the

existence of the published patent application does constitute actual notice within the meaning of

§ 154(d). For instance, in *Stephens v. Tech Int'l, Inc.*, 393 F.3d 1269, 1275-76 (Fed. Cir. 2004),

the Federal Circuit described a letter placing an alleged infringer "on notice of potential

infringement of potentially-patentable subject matter contained in a . . . patent application" as a

"valid section 154 notice."[11] Similarly, the Western District of Wisconsin recently held that a

---

[11]*Stephens* appears to be the only Federal Circuit case to consider § 154(d)'s "actual notice" requirement. It did so, however, in the context of review of an award of attorney fees, so it does not appear that the Federal Circuit was definitively construing the requirements of the statute. Nonetheless, *Stephens'* statement of what is required by § 154(d) – "Sections 154(d)(1) and (2) permitted [the patentee] to obtain reasonable royalties for activities amounting to infringement of the '222 application's claims if: (1) the issued patent claims are substantially identical to the claims in the published application; and (2) [the alleged infringer] had actual notice of the published patent application," 393 F.3d at 1275 (internal footnotes omitted) – tracks the statutory language. Hence, my conclusions – that no affirmative act is required by the

letter identifying a published patent application ("we draw to your attention . . . the enclosed documents"), sent along with the application (and, it appears, just the application, not the application and thousands of other documents) by the patentee to the alleged infringer, constitutes sufficient notice for purposes of § 154(d). *First Years,* 2008 WL 4283122, at *1.

### 2.   Microsoft Did Not Have Actual Notice

Turning to the record here, there is no dispute of fact as to what documents relating to the Published Application Arendi sent to Microsoft and Microsoft received. (1/21/10 Tr. at 5, 34-35) The parties' dispute is whether the materials Microsoft received from Arendi in the Rhode Island Litigation satisfied § 154(d)'s requirement that Microsoft have actual notice of Arendi's Published Application. This is an issue amenable to summary judgment.[12]

I conclude that Microsoft did not have actual notice of the Published Application on January 7, 2003. Arendi's cover letter accompanying the January 7, 2003 document production in the Rhode Island Litigation made no reference to the Published Application or to the documents within the production relating to the Published Application. Arendi relies, instead, almost exclusively on its provision to Microsoft of the Notice of Publication. But the Notice of Publication is just one page out of nearly 7,000 pages that Arendi produced to Microsoft in that same production. Even considering the additional documents in Arendi's production that relate to the Published Application – that is, the drafts and other prosecution history materials – in total

---

patentee and that the alleged infringer need only have notice of the application and not also of the basis for infringement – are entirely consistent with *Stephens.*

[12]At the hearing, it appeared that both parties agreed that once the Court determines the meaning of "actual notice," it is a question of law whether the undisputed facts (i.e., the identity and substance of the documents Arendi sent to Microsoft) satisfy the "actual notice" requirement of the statute. (*See* 1/21/10 Tr. at 5, 34-36.)

the pages relating to the Published Application accounted for just 126 of the 6,876 pages (1.8%) produced by Arendi.[13]  There was nothing in the cover letter to draw Microsoft's attention to these 126 pages.  Nor was there any reason for Microsoft to focus on this minuscule portion of the production or to suspect that it might find within it notice of a basis for Arendi to assert provisional rights against it.

In some respect, a single-page Notice of Publication dropped into nearly 7,000 pages of document production is analogous to a published application being available in a database but not expressly drawn to the attention of the alleged infringer.  The authors of the legislative history did not intend for § 154(d)'s actual notice requirement to be deemed satisfied by mere availability of a patent application in a public database.  Even Arendi concedes that such database availability is insufficient to constitute actual notice.  (1/21/10 Tr. at 38)  Arendi's placement of the Notice of Publication amidst a 6,876-page production may have given Microsoft constructive notice of the Published Application, but it did not provide actual notice, as is required by the statute.  Because Microsoft did not have actual notice of Arendi's Published Application, Arendi is not entitled to provisional damages.

---

[13]Because the bulk of these additional application-related materials were drafts, and most also predate the May 9, 2002 publication date of the Published Application, they are of limited help to Arendi in demonstrating that Microsoft had actual notice of the eventual Published Application.

### 3.    "Substantially Identical"

Because I have concluded that the undisputed facts fail to establish that Microsoft had actual notice of Arendi's Published Application, there is no need to determine whether claim 1 of the Published Application is substantially identical to claim 1 of the '854 patent.[14]

## RECOMMENDED DISPOSITION

For the reasons set forth above, I recommend that Microsoft's Summary Judgment Motion (D.I. 132) be GRANTED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections **of no longer than ten (10) pages within fourteen (14) days after being served with a copy of this Report and Recommendation**.  Fed. R. Civ. P. 72(b).  The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court.  *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 Fed. Appx. 924, 925 n.1 (3d Cir. 2006**). A party responding to objections may do so within fourteen (14) days after being served with a copy of objections; such response shall not exceed ten (10) pages.  No further briefing shall be permitted with respect to objections without leave of the Court.**

---

[14]A determination of whether the two claims are "substantially identical" may be impacted by the Court's claim construction ruling in this case.  (*See* 1/21/10 Tr. at 53-58.)  The parties' request for construction of disputed claim terms is presently pending before Judge Farnan.

20

The parties are directed to the Court's Standing Order In Non-*Pro Se* Matters For

Objections Filed Under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is

available on the Court's website, www.ded.uscourts.gov/StandingOrdersMain.htm.


Dated: March 22, 2010
Wilmington, Delaware

The Honorable Leonard P.  Stark
UNITED STATES MAGISTRATE JUDGE